```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| ANNAMARIE GUARENTE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action |
|  | ) No. 16-cv-12003 |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social<br>Security Administration, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

August 23, 2017

Saris, C.J.

### INTRODUCTION

Plaintiff AnnaMarie Guarente seeks judicial review of the decision by the Social Security Administration ("SSA") to deny her claim for Supplemental Security Income ("SSI") benefits and Social Security Disability Insurance ("SSDI") benefits. Plaintiff argues that: 1) the Administrative Law Judge ("ALJ") failed to properly weigh the opinion of her treating ophthalmologist, and 2) the ALJ erroneously rejected the opinion of her treating podiatrist. For the reasons set forth below, the Court **DENIES** Plaintiff's motion to reverse the decision of the

1

Commissioner. Docket No. 16. Defendant's motion to affirm is **ALLOWED**. Docket No. 20.

## FACTUAL BACKGROUND

At the time of the hearing before the ALJ on November 6, 2014, Plaintiff was fifty-three years old. R. 23. The ALJ denied Guarente's application for benefits on March 11. 2015. R. 29. Her request for reconsideration was denied on August 4, 2016. R. 1-4.

I. **Work History and Education**

Plaintiff has an Associate's degree. R. 41. At the time of the hearing, she worked as a part-time kitchen helper at a school five days a week from 10 A.M. to 1:15 P.M. This job required her to stand for three hours cooking, preparing food, and serving children. R. 41-42.

II. **Medical History**

Plaintiff alleges disability beginning March 31, 2011 due to high cholesterol, hypertension, neuropathy, retinopathy, diabetes, depression, and anxiety. R. 18, 74-75.

On March 23, 2011, Dr. Sunil Rao, a retina specialist, evaluated Plaintiff for non-proliferative diabetic retinopathy in both eyes. R. 323. Dr. Rao's follow-up observations in December 2011, May 2012, and September 2012 indicated that Plaintiff's visual acuity remained stable. R. 316, 320, 495-96.

2

On March 31, 2011, Plaintiff visited Dr. Meghan Sass for a follow-up appointment concerning her diabetes mellitus type II, which was diagnosed in 2006. R. 21, 308. Plaintiff reported walking for exercise, but she complained of some numbness and burning in her feet. R. 308. Dr. Sass observed normal movement of the extremities, intact sensation and motor function, as well as normal gait and station. R. 309. At a June 2011 appointment, Dr. Sass also noted poor control of Plaintiff's diabetes and indicated that treatment with insulin was necessary. R. 304.

At a follow-up exam for cholesterol and hypertension on August 19, 2011, Dr. Lisa Bowie observed normal motor function, normal gait and station, and intact sensation and motor function. R. 350. Plaintiff did not complain of fatigue and reported walking for exercise. R. 350. The following month, Dr. Bowie noticed a slight decrease in vibratory sensation in the bottom of both feet but an overall normal gait and station, full motion in the extremities, and intact nerves R. 346. Plaintiff again did not complain of fatigue, muscle pain, weakness, or paresthesia.[1] R. 345. In November 2011, Plaintiff reported that she walked daily, improved her diet, and felt that her toe numbness improved. R. 299. Dr. Sass observed normal movement of

---

[1] Paresthesia is a skin sensation such as burning or tingling that has no apparent physical cause. See The American Heritage Medical Dictionary.

3

the extremities and normal reflexes. R. 300. She also noted improvements in Plaintiff's blood sugar levels and saw no signs of significant neuropathy. R. 299.

On August 24, 2012, Dr. E. Kelly McLaughlin, Plaintiff's treating podiatrist, noted discolored, thick, and painful toenails; limited ambulation from foot pain; and limited sensation. R 602-03. Plaintiff complained of toe pain, foot pain, and presented with paresthesia. R. 602. Dr. McLaughlin diagnosed Plaintiff with neuropathy and observed that her overall sensation was not intact. R. 603.

In a November 2012 visit to Dr. Bowie for a routine follow-up. R. 332 Plaintiff noted that she walked for exercise and denied fatigue. R.332-33. Dr. Bowie observed poor control of Plaintiff's diabetes partly due to six weeks of non-compliance with medication and an incorrect insulin dosage. R. 334. In February 2013, Plaintiff complained to Dr. Bowie that she had back pain radiating into her right leg. R. 536. She denied fatigue, weakness, and paresthesia. R. 537. Dr. Bowie found full motion in the extremities, no issue with nerve or motor function, and normal gait and function. R. 538. However, Dr. Bowie noted that both Plaintiff's feet were hypersensitive to light touch. R. 538.

On January 22, 2013, Plaintiff saw Dr. Magdalena Krzystolik for her retinopathy. R. 492. Dr. Krzystolik followed up with

4

Plaintiff in March and July 2013. R. 491, 614. Plaintiff also visited Dr. Krzystolik in January and May 2014. R. 610, 612. Throughout this time Guarente had stable vision in both eyes even though she had severe non-proliferative diabetic retinopathy but there was no evidence of clinically significant macular edema in either eye. R. 611.

In February 2014, Dr. Bowie saw improvements in Plaintiff's diabetes. R. 511. She also noted full motion in the extremities, normal sensation and motor function, intact nerves, as well as normal gait and station. R. 510. Plaintiff did not complain of fatigue, pain, weakness, or paresthesia. R. 509.

In May 2014, Plaintiff complained to Dr. McLaughlin of lower extremity paresthesia, burning, and hyperesthesia. R. 595. Dr. McLaughlin concluded that Plaintiff had keratosis[2] and a pre-ulcer condition on her left big toe. R. 596. Dr. McLaughlin also observed intact sensation in the lower extremities. R. 596.

III. **Treating Physicians' Opinions**

    **A. Dr. Krzystolik's Medical Evaluation**

In October 2014, Dr. Krzystolik diagnosed Plaintiff with severe non-proliferative diabetic neuropathy in both eyes, but said: "at this time vision is good." R. 649-50. Dr. Krzystolik

---

[2] Keratosis refers to a skin condition resulting in benign, superficial and often pigmented lesions that usually occur after one's third decade. See Stedmans Medical Dictionary STEDMANS 469330 (last updated Nov. 2014).

5

noted Plaintiff could complete visual activities and had no exertional or postural limitations caused by her problems. R. 650. According to Dr. Krzystolik, Plaintiff could frequently stoop, crouch, climb ladders, and lift ten pounds frequently and more weight as tolerable. R. 650. Dr. Krzystolik does not address standing or walking.

### B. Dr. McLaughlin's Medical Evaluation

In December 2014, Dr. McLaughlin, the treating podiatrist, opined in the physical residual functional capacity ("RFC") assessment that Plaintiff could frequently lift less than ten pounds and occasionally lift ten pounds. R. 665. She also noted that Plaintiff could stand or walk less than two hours and sit for six hours. R. 665. She observed that Plaintiff had a limited ability to push and pull using her lower extremities but that she had no postural limitations. R. 665-66. She also prohibited Plaintiff from exposure to extreme temperatures, hazards, and vibrations. R. 668.

## IV. State Agency Physicians' Evaluations

### A. Dr. M.A. Gopal, State Agency Consultant

In January 2013, Dr. Gopal conducted a review of the record. R. 92. In Dr. Gopal's assessment, Plaintiff's diabetes resulted in the following limitations: frequent lifting up to ten pounds, occasional lifting up to twenty pounds, sitting for

six hours in an eight-hour workday, standing or walking for six hours in an eight-hour workday. R. 90.

**B. Dr. Ann Fingar, State Agency Consultant**

In June 2013, Dr. Fingar reviewed Plaintiff's record. R. 123. Dr. Fingar opined that Plaintiff's diabetes and peripheral neuropathy led to several limitations: frequent lifting up to ten pounds, occasional lifting up to twenty pounds, sitting for six hours in an eight-hour workday, standing or walking for six hours in an eight-hour workday. R. 120-21. Dr. Fingar noted that Plaintiff could conduct the following activities: frequently climb stairs and ramps, stoop and balance, as well as occasionally climb ladders, scaffolds, and ropes. R. 121. She also noted Plaintiff could crawl and crouch. R. 120. Dr. Fingar advised that Plaintiff should avoid exposure to hazards. R. 122.

## V. <u>Hearing Before the ALJ</u>

The administrative hearing was held on November 6, 2014 by ALJ William Ramsey. R. 35. Plaintiff was represented by counsel. R. 35.

**A. Plaintiff's Testimony**

Plaintiff testified at the hearing as follows: she worked part-time from 10 A.M. to 1:15 P.M. as a kitchen helper in an elementary school. R. 42. Her day consisted of making breakfast, doing morning chores, showering, and dressing herself before work. R. 42. She would stand at work for three hours cooking,

7

preparing food, and serving children. R. 43. She would then go home from work and immediately raise her feet on the couch for a two-hour break because of pain from her big toe to her hip. R. 42. Afterwards, she would do some more chores such as laundry and would cook dinner. R. 42.

Plaintiff mentioned that she would not take a full-time position if available because she needed breaks due to the pain in her legs. R. 43. She testified to being limited to three hours of standing before experiencing pain or fatigue. R. 44. She could bend at the waist to pick up an item from the ground, but could not kneel, stoop, or bend down for very long. R. 45. She testified that she could lift a gallon of milk with either arm but could not lift two gallons of milk simultaneously. R. 46, 49. Plaintiff stated that she routinely babysat for her granddaughter with her husband's help and that she could drive to school and the grocery store. R. 44-45, 48.

**B. Vocational Expert's Testimony**

The ALJ also questioned Dr. Robert Lowsky, a vocational expert for this case. R. 53. Dr. Lowsky was asked to consider a hypothetical:

> "individual with the same age, education and work history as the claimant who is able to lift twenty pounds occasionally and ten pounds frequently; stand and walk at least six hours in an eight-hour workday and sit with normal breaks of about six hours in an eight-hour workday [and also] has the ability to occasionally climb, balance, stoop, kneel, crouch or crawl, but never climb

a ladder. They must avoid concentrated exposure to all
hazards. . . . [and] possess the occasional ability to
push or pull with both lower extremities."

R. 54. Dr. Lowsky was then asked if there are jobs in the national economy that such a person could perform given the above limitations. R. 54. Dr. Lowsky testified that such a person would be able to perform the duties of a photocopy machine operator, an inspector, or a mail clerk. R. 54-55.

### C. Decision of the ALJ

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended disability onset date of March 31, 2011 because her part-time work did not qualify as substantial gainful activity. R. 20. At step two, the ALJ found that Plaintiff had several severe impairments: anxiety disorder, panic attacks, depression, diabetes, retinopathy, and neuropathy. R. 21. She also had the non-severe impairment of obesity. R. 23. At step three, the ALJ did not find an impairment or combination of impairments severe enough or the medical equivalent of the statutory definition of a disability. R. 24. At step four, the ALJ found that Plaintiff had the RFC to perform light work except that:

> [S]he is able to lift twenty pounds occasionally and ten pounds frequently. She can stand or walk at least six hours in an eight-hour work day and she can sit (with normal breaks) about six hours in an eight-hour workday. She has the ability to occasionally climb or balance, sto[o]p, kneel, crouch or crawl. She can never climb a ladder. She possesses occasional ability to push and pull with both

9

lower extremities. She must avoid concentrated exposure to hazards. Her work is limited to only occasional interaction with the public, co-workers, and supervisors. Her work is limited to the performance of simple, routine, and repetitive instructions. She would need to elevate her legs while sitting, but less than 20% of the time during an eight-hour workday.

R. 25.

Considering Plaintiff's RFC, age, education, and work experience, the ALJ found at step five that the national economy offered Guarente substantial employment which she could adjust to and perform. R. 28. Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act. R. 29.

## **PROCEDURAL HISTORY**

Plaintiff filed for SSI benefits and SSDI benefits on July 26, 2012, alleging disability commencing March 31, 2011. R. 18. The application was denied at the initial level and upon reconsideration. R. 18. Plaintiff requested a hearing which was held before ALJ William Ramsay on November 6, 2014. R. 18. On March 11, 2015, the ALJ found that Plaintiff was not disabled. R. 29. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 4, 2016. R. 1. The case is now ripe for review under 42 U.S.C. § 405(g).

**DISCUSSION**

I.  **Legal Standards**

   **A. Standard of Review**

   The ALJ's factual findings are entitled to deference. "We must affirm the [ALJ's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). A finding is supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

   "Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Rascoe v. Comm'r of Soc. Sec., 103 F. Supp. 3d 169, 175 (D. Mass. 2015) (quoting Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001)).

   **B. Statutory and Regulatory Framework**

   A claimant seeking benefits under the Social Security Act must prove that he or she is disabled. 42 U.S.C. § 423(a)(1)(E).

11

To qualify as disabled, a claimant must show "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). To meet this definition, a claimant must "have a severe impairment[]" that renders her "unable to do [her] past relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a) (internal citations omitted).

The ALJ employs a five-step sequential evaluation process to evaluate a claim for disability benefits. 20 C.F.R. § 404.1520(a). If the ALJ determines at any step that the claimant is disabled or not disabled, the evaluation concludes at that step. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The steps are:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

In the first four steps, the claimant bears the burden of proof to establish disability. <u>Freeman</u>, 274 F.3d at 608. At step five, the burden shifts to the Commissioner. <u>Arocho v. Sec'y of Health and Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982).

**ANALYSIS**

Here, the key issues are (1) whether the ALJ failed to properly explain the weight given to Dr. Krzystolik's opinion and (2) whether the ALJ improperly rejected Dr. McLaughlin's opinion.

**I.  Dr. Krzystolik's Opinion**

Plaintiff argues the ALJ was required to explain and provide good reasons for the failure to explicitly adopt Dr. Krzystolik's opinion because she had been Plaintiff's treating ophthalmologist since January 22, 2013. Additionally, Plaintiff posits that the ALJ's failure to explicitly state the weight given to Dr. Krzystolik's opinion is in error because Dr. Krzystolik's opinion contained limitations for Plaintiff that were more significant than those determined by the ALJ.

Under SSA regulations, the ALJ must weigh treating physicians' opinions and provide good reasons for the weight he ultimately assigns to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2); <u>King v. Colvin</u>, 128 F. Supp. 3d 421, 436 (D. Mass. 2015) ("SSA regulations state than an administrative law

judge must give good reasons for rejecting a treating sources opinion.").

In October 2014, Dr. Krzystolik found that Plaintiff could frequently lift up to ten pounds and even more as tolerated. R. 650. Plaintiff could also frequently stoop, crouch, and climb ladders. R. 23. Contrary to Plaintiff's assertion, Dr. Krzystolik's observations are not inconsistent with the ALJ's decision, which also found that Plaintiff could lift ten pounds frequently, lift twenty pounds occasionally, stoop, and crouch. R. 25. Instead, the ALJ's decision is actually more favorable to Plaintiff because the ALJ's findings indicated that Plaintiff could never climb ladders. R. 25. The ALJ's decision is not a rejection of the opinion of the ophthalmologist, but rather seems to embrace it.

## II. Dr. McLaughlin's Opinion

Plaintiff argues the ALJ erroneously rejected Dr. McLaughlin's opinion that restricted the claimant to a sedentary level of exertion and that she could only walk or stand two hours and differed on the amount of weight she could lift.

In Social Security disability proceedings, treating physicians' opinions hold controlling weight if they are consistent with other substantial evidence in the claimant's record. 20 C.F.R. § 416.927(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ must assign a

14

weight through a factors-based test that considers the length of the treatment relationship, nature and extent of the relationship with applicant, whether the source provided evidence in support of the opinion, whether the opinion is consistent with the record as a whole, and whether the source specializes in the field. 20 C.F.R. § 404.1527(c).

However, the ALJ need not discuss each factor in his decision on the weight given to a treating physician's opinion if the ALJ provides good reasons supported by substantial evidence in the record. See 20 C.F.R. § 404.1527(c); Pinnick v. Colvin, 132 F. Supp. 3d. 180, 188 (D. Mass. 2015); see also Green v. Astrue, 588 F. Supp. 2d 147, 155 (D. Mass. 2008) (holding that remanding for ALJ's failure to explicitly address each potential factor would lead to a waste of judicial resources since another ALJ may likely come to the same conclusion).

At issue here is whether the ALJ reasonably discounted Dr. McLaughlin's opinion about how much weight Plaintiff could lift and how long Plaintiff could walk or stand. The ALJ explained that he rejected Dr. McLaughlin's opinion that restricted claimant to a sedentary level of exertion because it conflicted with "her activities of daily living and her continuing to work successfully part-time." R. 27. Significantly, Dr. McLaughlin's opinion that plaintiff could only stand two hours a day is

15

contradicted by her own testimony that she could stand three hours a day on her job. R. 43. On several occasions, Plaintiff reported to her doctors that she exercised by walking. R. 258, 299, 305, 333, 350, 509, 542, 637. She also testified that she drove, did household chores such as laundry, and went grocery shopping. R. 42, 44. Several of Guarente's doctors noted that she had full range of motion, full strength and gait, along with intact nerves and motor function. R. 300, 309, 346, 510. Such record evidence is inconsistent with Dr. McLaughlin's diagnosis that Plaintiff was functionally limited to a sedentary level of exertion.

Further, Dr. McLaughlin concluded that she could lift ten pounds occasionally. Remember, Dr. Krzystolik concluded she could lift ten pounds frequently. Two state agency consultants also opined that Plaintiff could lift ten pounds frequently, lift twenty pounds occasionally, and stand or walk for more than six hours per day. As a podiatrist, the scope of Dr. McLaughlin's medical evaluation was limited to impairments of her feet. See Acosta v. Comm'r of Soc. Sec., No. 1:15-CV-01125, 2016 WL 3027448, at *4 (M.D. Pa. May 12, 2016), report and recommendation adopted, No. 1:15-CV-1125, 2016 WL 3015154 (M.D. Pa. May 26, 2016) ("We note at the outset that pursuant to the Commissioner's regulations, a podiatrist is considered an "acceptable medical source" qualified to render a medical

opinion only to the extent that the opinion addresses issues within the scope of his or her medical practice under state law (i.e., foot or foot and ankle)." (citing 20 C.F.R. § 404.1513(a)(4))); see 20 C.F.R. § 404.1513(a)(4). Dr. McLaughlin's opinion that Plaintiff could frequently lift less than ten pounds and occasionally lift ten pounds relates to impairments to parts of the body that would fall outside the scope of Dr. McLaughlin's expertise. Thus, for the foregoing reasons, there is no error in the ALJ's decision to discount Dr. McLaughlin's opinion and give the state consultants' opinion some weight.

## ORDER

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner (Docket No. 16) is **DENIED**. Defendant's motion to affirm the Commissioner's decision (Docket No. 20) is **ALLOWED**.

/s/ PATTI B. SARIS  
Patti B. Saris  
Chief United States District Judge